(Commonwealth *v*. Bonsall et al.)

---

[PHILADELPHIA, MAY 5, 1838.]

## THE COMMONWEALTH *against* BONSALL and Others.

### QUO WARRANTO.

In 1784 an act was passed, entitled " An act to establish and incorporate a public school at Germantown, in the county of Philadelphia."   The preamble recited, that divers persons in Germantown, &c.; had raised money by subscription, &c., and maintained a school, &c.; that by the constitution of the commonwealth it was ordained, that a school or schools should be established in each county, by the legislature, with salaries to the masters, paid by the public, &c. ; and that divers of the inhabitants of Germantown had represented that the situation of the town, &c., rendered it a proper place to establish a school, agreeably to the said provision in the frame of government.   The second section declared, that the finances of the state were not in a condition to carry into execution the said provision of the constitution, by establishing schools at the· public expense in all the counties of the state, but that it was proper to promote the attempt of the petitioners, until something further could be done by the legislature in a more extensive way.   The eighth section, after declaring that no misnomer of the corporation should defeat any gift, &c., provided, that the constitution of the school should not be· " altered or alterable by any by-law of the trustees, or in any other manner than by an act of the legislature of this state."   In 1786, an act of the legislature was passed which recited the last mentioned provision, and that the trustees had agreed upon certain [*560]     *alterations, and had petitioned the legislature for their aid in altering and amending the said constitution ; and among other things the act provided, that the trustees should be chosen by such persons as had contributed or should contribute to the amount of forty shillings to the purposes of the corporation.   In 1837, an act of the legislature was passed, which repealed the last mentioned provision of the act of 1784, and declared that all citizens residing within the

(Commonwealth *v.* Bonsall et al.)

limits of the township of Germantown, which were therein defined, should be entitled to vote at all elections for the choice of trustees, &c. This act was not assented to, or accepted by the corporation, of the trustees or founders of the school, or a majority of the contributors: *Held*, that it was a valid act, and that the trustees chosen by the contributors of forty shillings, under the act of 1786, were not duly elected.

A WRIT of *quo warranto* was issued out of this Court at December term last, upon the suggestion of Abraham Keyser, F. W. Bockius, Samuel Johnson, W. H. Stokes, Daniel Billmeyer, Joseph Handsbury, and Joseph Dickinson, against Charles Bonsall, John Green, Charles J. Wister, William Wister, Samuel Betton, Samuel Harvey, and Justice Johnson, setting forth that the complainants were on the 1st of May, 1837, duly elected trustees of a certain corporation called and known by the name of "The Trustees of the Public School of Germantown in the county of Philadelphia," by the citizens residing within the limits of the township of Germantown, qualified to vote for county and state officers, agreeably to the provisions of a certain act of assembly of the commonwealth of Pennsylvania, approved the 31st day of March, 1837, and the eighteenth section thereof, entitled "A supplement to the act entitled 'An act for incorporating St. Paul's church in the city of Philadelphia,' and to an act entitled "A supplement to the act entitled 'An act for incorporating St. Paul's church in the city of Philadelphia,' and for other purposes;" but that notwithstanding the said election, the said defendants had exercised the said office, and usurped the said franchises, &c.

To this suggestion, the following plea was filed.

"And now, that is to say, on the 6th day of January, in the year one thousand eight hundred and thirty-eight, come the said Charles Bonsall, John Green, Charles J. Wister, William Wister, Samuel Betton, Samuel Harvey and Justice Johnson, by Wm. M. Meredith, their attorney, and having heard the suggestion filed in this case read, they complain, that under colour of the premises in the said suggestion contained, they are greatly vexed and troubled, and that by no means justly, because protesting that the said suggestion and the matter therein contained, are insufficient in law, and that they need not, nor are they bound by the law of the land to answer thereto; yet, for plea in this behalf they say, that the said commonwealth ought not to impeach or implead them by reason of the premises in the said suggestion above specified, because they say that heretofore, to wit, on the first day of September, in the year *one thousand seven hundred and eighty-four, at the county aforesaid, Thomas Ross, Joseph Galloway, John [*561] Jones, and others, had paid and contributed large sums of money,

(Commonwealth *v.* Bonsall et al.)

wherewith they had purchased a certain lot or piece of ground in Germantown, in the county of Philadelphia, and had thereon erected a school-house, and maintained a school therein called the Union School; which said lot or piece of ground, and the school-house thereon erected, on the day and year last aforesaid, at the county aforesaid, belonged to and were held for the use of the said school: and the said defendants further say, that afterwards, to wit, on the day and year last aforesaid, at the county aforesaid, the contributors to the erection and maintenance of the said school, applied by petition to the General Assembly of the representatives of the freemen of Pennsylvania, praying that the said contributors might be incorporated, and the defendants say that in compliance with the prayer of the said petition, an act of assembly was duly passed by the said General Assembly, and enacted into a law, on the 15th day of September one thousand seven hundred and eighty-four, entitled, "An act to establish and incorporate a public school at Germantown in the county of Philadelphia," by which, after reciting the premises, it was amongst other things enacted, that twenty-one persons who were contributors as aforesaid, named in the said act, should be the first trustees of the said school, and that the said trustees and their successors should forever thereafter be, and they were thereby erected, established and declared to be one body politic in deed and in law, to all intents and purposes, with perpetual succession, by the name and title of "The Trustees of the Public School of Germantown, in the county of Philadelphia," with power to take and hold, to themselves and their successors, for the use of the said school, any estate in any messuages, lands, tenements, or hereditaments, goods, chattels, moneys, or other personal estate, by the gift, grant, bargain, sale, conveyance, assurance, will, devise, or bequest, of any person or body politic whatsoever, provided the same shall not exceed in the whole the yearly value of one thousand pounds, and the same to grant, bargain, sell, convey, assure, devise and to farm let, place out at interest, or otherwise dispose of, for the use of the said school, in such manner as to them, or at least seven of them, should seem most beneficial to the institution, and to receive the rents, issues, profits, income, and interest of the same, and to apply the same to the proper use and support of the said school, and by the same name to sue, commence, prosecute, defend, implead and be impleaded, in any Courts of law or equity, and in all manner of suits and actions whatsoever; and to make, devise, and use, one common seal to authenticate all the acts and deeds of the corporation, and the same to break, alter, and renew at their pleasure; and generally, by and in the same name to do and transact all and every the business touching and concerning the premises, or

(Commonwealth v. Bonsall et al.)

which should be incidentally *necessary thereto, as fully [*562] and effectually as any natural person, or body politic or corporate, within this commonwealth have power to manage their own concerns. And it was further provided and enacted by the said act, that all and singular, the estate, real and personal, belonging to and held by any person or persons whatsoever, for the use of the said first above-mentioned school at Germantown, should be, and the same was, by force of the said act, transferred to, and vested in the trustees of the public school of Germantown, in the county of Philadelphia, and their successors forever, for the use of the said last-mentioned school. And the said defendants aver, that the said contributors afterwards, to wit, on the fifteenth day of September, in the year one thousand seven hundred and eighty-four, at the county aforesaid, accepted the said act, and the charter of incorporation therein contained, and from the time of the passing thereof, hitherto have used the franchises, liberties and privileges thereby granted, and continue to use the same, and were during all that time, and still are seized and possessed of, and enjoyed, and do enjoy the estate, real and personal whatsoever at the time of the passing of the said act belonging to and held by any person or persons whatsoever, for the use of the said first above mentioned school of Germantown, which estate, during all that time consisted and still consists, among other things, of certain moneys raised by the charitable contributions of individuals as aforesaid, and the above-mentioned lot or piece of ground in Germantown, and the schoolhouse aforesaid, which had been purchased and erected by the charitable donations of the contributors aforesaid, to wit, at the county aforesaid. And the said defendants further say, that afterwards, to wit, on the first day of September in the year one thousand seven hundred and eighty six, at the county aforesaid, the corporation created by the said act of assembly, applied by petition to the said General Assembly, praying that certain alterations and amendments might be made in the constitution thereof, and that in conformity with the prayer of the said last-mentioned petition, the said General Assembly on the sixth day of September in the year one thousand seven hundred and eighty-six, duly passed and enacted into a law, a certain other act of assembly, entitled "A supplement to an act entitled 'an act to establish and incorporate a public school at Germantown, in the county of Philadelphia," by which it was enacted, among other things, that forever thereafter the mode of electing the trustees of the said corporation should be, that all and every the persons, who theretofore had contributed or thereafter should contribute to the amount of forty shillings, gold or silver money of Pennsylvania, towards the first erection of the said Union school-house, or the

(Commonwealth *v.* Bonsall et al.)

support of the same, or towards the support of the said incorporated school, should be entitled to vote for the election of trustees of the said corporation, and no other person whatsoever. And it was by the last-mentioned act further enacted, that on the [*563] *first Monday in May in every year thereafter, the election should be held at the school-house in Germantown, whereof notice should be given in the manner prescribed in the said act, at which election all the said contributors entitled to vote in manner aforesaid, should, by a majority of votes of the electors present, by ballot, in the usual form of holding elections in this state, elect seven trustees, to supply the place of the said trustees whose offices should have expired. And the said defendants aver, that the said corporation afterwards, to wit, on the sixth day of September, in the year one thousand seven hundred and eighty-six, at the county aforesaid, accepted and assented unto the provisions of the last-mentioned act of assembly, and have ever since the passing thereof used, and still do use, their franchises, liberties and privileges agreeably thereto, and have never at any time accepted or assented to any subsequent alteration or amendment of the charter or constitution of the said corporation whatsoever. And the said defendants aver that afterwards, to wit, on the first day of January, one thousand eight hundred and thirty-six, they respectively contributed to the support of the said incorporated school to the amount of forty shillings and upwards, agreeably to the terms of the last-mentioned act of assembly. And the said defendants in fact say, that at an election duly held at the school-house in Germantown, on the first Monday in May, in the year one thousand eight hundred and thirty-seven, by the contributors entitled to vote in manner aforesaid, the said defendants were duly elected by a majority of votes of the said contributors, to be trustees of the said corporation, to supply the place of the senior trustees whose offices had then expired, to wit, at the county aforesaid; and thereupon and by virtue thereof they, the said defendants, during all the time mentioned in the said suggestion, did use and exercise the office of trustees of the public school of Germantown, in the county of Philadelphia, and by reason of the premises, they, the said defendants, during all that time were trustees of the said public school, to wit, at the county aforesaid; and by that warrant the said defendants, during all the time in the said suggestion in that behalf mentioned, used and exercised the office of trustees of the said public school, and all the liberties, privileges, and franchises belonging and appertaining to the office of trustees of the said public school, as it was lawful for them to do : without this, that the said defendants, the offices, liberties, privileges and franchises in the said suggestion men-

(Commonwealth v. Bonsall et al.)

tioned, or any of them, did usurp upon the commonwealth in manner and form as by the said suggestion is supposed: all and singular which said matters and things they, the said defendants, are ready to verify, as the Court shall award.—Wherefore they pray judgment, and that the aforesaid offices, liberties, privileges and franchises by them above claimed, may be adjudged and allowed to them, and that they may be dismissed and discharged by the Court hereof and from the premises above charged upon them, &c."

· *The following replication was put in.

"And the said commonwealth, by J. R. Ingersoll [*564] their attorney, say, that for any thing before alleged in the said plea, the said Commonwealth ought not to be barred from having their aforesaid proceeding against the said respondents, because, protesting that the said plea, and the matters therein contained, are insufficient in law to bar the said commonwealth from having their aforesaid proceeding against them; for replication they say, that the said respondents were not duly elected and chosen trustees of the public school of Germantown in manner and form as in the said plea is alleged; and this they pray may be inquired of by the country; and they hereby set forth and annex the act of assembly of the commonwealth of Pennsylvania, mentioned and referred to in the said suggestion, and pray that the copy as hereto annexed, may be taken and received as part of this replication.

"Section 18. So much of the supplement to an act entitled an act to establish and incorporate a public school at Germantown in the county of Philadelphia, passed the sixth day of September Anno Domini, one thousand seven hundred and eighty-six as requires the payment of forty shillings as the qualifications of persons entitled to vote for trustees of said public school at Germantown, be repealed, and that hereafter it shall be lawful for all citizens residing within the limits of the township of Germantown, qualified to vote for county or state officers, be entitled to vote at all elections for the choice of trustees to manage the concerns of said public school. That Germantown and its vicinity, as far as the eligibility of trustees for the said public school is concerned, be composed of, and defined to be the townships of Germantown, Bristol and Roxborough, and the parts of Penn Township and Northern Liberties, included in a line drawn from the Wingohocking creek and Second street, along the lane leading through the Rising Sun village, to its junction with the Philadelphia, Germantown and Norristown Rail Road, thence up the Manyunk branch of the said rail-road, to the Nice Town lane, thence along the said lane to the river Schuylkill, thence up the said river to Roxborough township aforesaid; and that

(Commonwealth *v.* Bonsall et al.)

none but citizens residing within the above limits, shall be eligible to serve as trustees of the said public school of Germantown; and that the provision in the charter relating to a German school be complied with."

Upon these pleadings it was agreed by counsel that "the case shall be considered as on a special verdict finding all the facts set forth and alleged in the defendants' plea in bar, and finding also that the act of assembly set forth and annexed to the replication was not, nor were the terms and provision thereof, or any of them, at any time accepted or assented to by the said corporation or the *trustees or founders of the said schools or a majority of the contributors thereto."

[*565]

Mr. *Mallery,* for the relators.

The question is, whether the act of 1837, empowering all the taxable inhabitants of the township to vote for trustees, is constitutional? The eighth section of the act of 1784, provides that the constitution of the school thereby established, shall never be "altered or alterable by any by-law or ordinance of the said trustees, or in any other manner than by an act of the legislature of this state; but the same constitution shall always be construed most beneficially for the said corporation." The preamble of the act of 1786, recites the provision of the act of 1784, relating to alterations, and proceeds to make certain amendments. The reservation of power by the legislature, is distinctly expressed; and it is well settled, that the legislature is not to be supposed to have used words in vain, (Plowden, 80). The case then comes within the exceptions stated in the books to the rule, that the legislature cannot alter the charter of a private corporation without their assent. 2 Kent's Comm. 306; *Dartmouth College Case,* (4 Wheat. 708); *Wales* v. *Stetson,* (2 Mass. Rep. 146); *M'Cleary* v. *Pennington,* (1 Paige, 102). Independently of this reservation, however, the act of 1837 is not such an alteration of the charter as to come within the rule respecting the inviolability of contracts. The only change is in respect to the electors. The trustees had no vested rights until elected to office. Members of a corporation are the parties interested in the revenues or privileges of the corporation. (1 Saunder's Rep. 344). Here the persons paying forty shillings, had nothing but the naked privilege of voting. I take it, that under the old charter any person might be a trustee, whether a voter, resident, or otherwise. In the *Dartmouth College Case,* (4 Wheat. 628,) Judge Marshall declares the meaning of the word "contracts," in the Constitution of the United States to be "contracts respecting property, under which some individual could claim a right to something beneficial to himself;" and he adds that the clause in

(Commonwealth v. Bonsall et al.)

the constitution "ought to be confined to cases of this description, to cases within the mischief it was intended to remedy." *Satterlee* v. *Matthewson*, (2 Peters, 612); *Fletcher* v. *Peck*, (6 Cranch, 87); 3 Story's Comm. on the Constitution, 258, 269.

Mr. *Meredith* for the defendant.

The plea shows that this school was founded by individual contributions; and all its property has arisen from this source. The preamble to the act of 1784, states that " divers well disposed persons in and about the neighbourhood of Germantown, &c., did many years past, by subscription, raise a sum of money wherewith *they purchased a lot of ground and thereon erected [*566] a large and commodious school-house, and for a considerable time have maintained a school therein," &c. The legislature then proceeds to declare its inability to endow it. The provision in the 8th section relating to alterations in the constitution has been stretched beyond its obvious meaning, which was to give permanence to the institution. The object was to control the trustees, not to give power to the legislature. There is a well known distinction between the cases in which the king may alter statutes of foundation, and where he is the founder. The construction of a statute is to be preferred which will not produce a wrong. Dwarris on Statutes, 688. This is an eleemosynary corporation; and it is laid down that such corporations are beyond the power of the legislature. 2 Kyd on Corporations, 103, 181. The preamble to the act of 1786, recites, that the trustees had applied to the legislature for their aid in making amendments, &c. to the charter, which was certainly unnecessary, if the legislature had the power independently of this. In the preamble to the act of 1784, when the legislature speak of the provision of the constitution of 1776, they must be taken to refer to the future establishment of a more extensive public school; not to any interference with this.

Mr. *J. R. Ingersoll* in reply.

This case is clear of any difficulty arising from legislative interference with property, since there is nothing of the kind involved in the question of voting for trustees. If there is any doubt at all upon the subject, the Court will not declare an act of assembly void. *F. & M. Bank* v. *Smith*, (3 Serg. & Rawle, 72). The act of 1784, established a sort of union between the legislature and the contributors, with reserved rights to each. In the preamble to the act of 1734, it is said that " the inhabitants of Germantown," generally, have applied to the legislature. They were the parties contracted with. Again, it was declared that the school was to be established " agreeably to the provision

in the frame of government," that is, a public school, liable to the control of the legislature. Nothing can be more distinct than the reservation of power by the legislature to alter the charter; and it is equally clear, that this power is exclusive of the trustees or corporators. The preamble to the act of 1786, proves nothing but that the trustees petitioned the legislature to make the alterations which they desired.

The opinion of the Court was delivered by

SERGEANT, J.—The language of the eighth section of the act of the 15th of September, 1784, is as follows : " Nor shall the constitution of the said school hereby established, be ever altered or alterable, by any by-law or ordinance of the said trustees, or [*567] in any *other manner *than by an act of the legislature of this state."* The obvious meaning and construction of these words, is to reserve to the legislature the power to alter the constitution of the school, and that without the consent of the corporators. Every other authority to alter is prohibited. No by-law or ordinance of the corporation can do it; nor can it be done in any other manner : but the constitution is not to remain forever unalterable, since circumstances might occur to render it expedient to change it. Who then is to do it? No other than the legislature by an act of assembly. They may do it : and they alone are empowered to do it. It is said, that although the legislature may make an alteration, yet it cannot be without the consent of the corporators; and many weighty arguments have been urged why the consent of the corporators ought to be an indispensable ingredient in the power of alteration. It is sufficient to say, that if the act of assembly had intended to make such consent requisite, it was easy to insert the words "by and with the consent of the corporation," or something equivalent. This has not been done; and I do not think we can insert them, on the ground that it would have been right or expedient to do so, even supposing we were satisfied of that position. Certainly the legislature, in a grant of corporate rights and privileges, may reserve the right to alter, annul, or amend them, either generally, or on certain terms and conditions; and when that makes a part of the compact between the legislature and the corporators, the latter cannot object to the exercise of a power thus expressly reserved—provided, where, in any case, terms or conditions of alteration are appended, the case contemplated has arisen. Here the power reserved is general and unconditional, and may be exercised whenever the legislature deems it expedient to do so.

If the whole frame and context of the act of 1784 is looked at, and especially the preamble, strong reason exists for believing that the founders of this school and the legislature contemplated

(Commonwealth *v.* Bonsall et al.)

the plan then adopted respecting it, as only a temporary, or at least, unsettled scheme, and looked to some future period when it would be expedient for the legislature to modify or change it. The act is entitled an act to establish and incorporate a *public* school. The preamble recites, "that whereas, by the forty-fourth section of the frame of government of this commonwealth it is ordained, that a school or schools shall be established in each county by the legislature for the convenient instruction of youth, with such salaries to the masters, *paid by the public,* as shall enable them to instruct youth at low prices; and whereas divers of the inhabitants of Germantown have by petition to this house represented, that the situation of the place, the large and commodious buildings already erected, and divers other circumstances render it a proper place to establish a school *agreeable to the said provision* in *the frame* of government, &c.; and whereas the finances of this state, so soon -after a long *and expensive war are not in a condition (without an increase of [*568] taxes already heavy,) to carry into execution *immediately* the design of the said section, by establishing schools at the public expense in all the counties of this state, but it is nevertheless highly proper to promote the laudable attempt of the petitioners by every reasonable encouragement, *until something further can be done by the legislature in a more extensive way.*"

This seems to contemplate a future action in respect to this school, when the finances of the state would permit the legislature to establish a system of public schools, to be supported by the state; and in the meantime, that the founders of this school might go on under the incorporation, and with their own funds and contributions conduct the school in the buildings that had been previously erected. No donation is given to it by the state; the reason assigned being the low state of its finances, in consequence of the war, though the request of the petitioners seems to have been to establish a school, agreeably to the provision in the frame of government,—a public school—probably a school to which the legislature should grant some endowment under that provision. As the legislature were not able to do this, a middle course seems to have been struck out; it is incorporated as a public school; the corporators are allowed to carry it on as such; privileges and franchises are conferred; but it is prohibited from making of itself any change or alteration, either by its own intrinsic authority, or in any other manner: yet as at a future day a general and uniform system of public schools would probably be adopted, in pursuance of the injunctions of the constitution, which might require a modification or change of the charter of this school, such change may be made by the authority of the legislature: and with this intention and

design, as recited in the preamble, the language of the eighth section conforms.

We are therefore of opinion, that the change in the terms and conditions of this charter, made by the act of the 31st March, 1837, by which the qualification of the electors required by the act of 1784 is repealed, and the right of voting is extended to all citizens residing within the limits of the township of German-town, (as afterwards defined,) qualified to vote for county or state officers, was constitutionally made under the power reserved in the eighth section of the original act.  It follows that the defendants claiming as trustees, by virtue of an election by the contributors held on the first Monday in May, 1837, under the original act and its supplement, have no title as such trustees, not being elected in the manner and by the persons prescribed in the act of 1837.  What further may be the effect of the fact agreed upon, that this act of assembly was never accepted or assented to by the corporation, or the trustees or founders of the school, or a majority of the contributors, so far as respects the property of the corporation, we give no opinion.  The only question on the present proceeding is, as to the right of exercising [*569] *the franchises and privileges belonging to the office of trustees conferred by the charter; and the opinion we give is as to that.

Judgment of ouster.

Cited by Counsel, 6 Barr, 89; 2 Casey, 298.
Cited by Lewis, C. J., dissenting, 1 Grant, 277.