The Peoples Natural Gas Company, Appellant, *v.*
The Public Service Commission of the Com-
monwealth of Pennsylvania, Appellee, and
Johnstown Fuel Supply Co., and
Joseph Cauffiel, Mayor of the
City of Johnstown, Interven-
ing Appellees.


*Public Service Commission — Jurisdiction — Natural gas com-
panies—Right to discontinue service—Interstate commerce—Act of
May 29, 1885, P. L. 29, section 5 (Natural Gas Act).*

A natural gas company, organized under the laws of Pennsyl-
vania, which supplied gas under a special contract to another
natural gas company, which in turn served a municipality within
the first company's field of supply, is a public service company and
subject to the provisions of the Public Service Company Law with
respect to the sale of natural gas to the other company.

A natural gas company which purchases a portion of its gas
from a West Virginia corporation, which does no business in
Pennsylvania, and commingles that gas with gas supplied from
Pennsylvania fields and subsequently delivers it to its customers in
Pennsylvania, is not, with respect to such delivery, engaged in
interstate commerce, but is subject to the jurisdiction of the Public
Service Commission.

Where a natural gas company has been voluntarily supplying
another public company with gas for the consumption by the pub-
lic in a municipality within the first company's field of supply, it
cannot summarily discontinue such service and eliminate the
municipality from its charter field of supply, without first applying
to and obtaining the consent of the Public Service Commission.

The Public Service Company Law expressly declares the consent
of the commission necessary before any public service company can
obtain any additional rights, powers or privileges by an amendment
or supplement to its charter, or otherwise.  A release from the
performance of public duties or the furnishing of public service
in a part of its territory which it would otherwise be bound to
serve, may well be considered an additional privilege obtained, no
less than an extension of such service may be so regarded.  Such a
right or privilege may be negative as well as positive.

A natural gas company supplying gas in a certain territory can-
not, by filing with the secretary of the Commonwealth a certificate

excluding a portion of that territory from its charter field cease to operate therein, without the consent of the Public Service Commission.

A public service company which does not seek to surrender the franchise power granted by its charter, but merely to curtail its field of service under that power by abandoning certain territory which otherwise it would be bound to supply, must first secure the consent of the Public Service Commission.

PORTER and LINN, JJ., dissent.

Argued April 26, 1922.   Appeal, No. 107, April T., 1922, by Peoples Natural Gas Company, from order of the Public Service Commission, Complaint Docket Nos. 1083 and 1098, 1916, in the case of Louis Franke v. Johnstown Fuel Supply Company and Peoples Natural Gas Company.   Before ORLADY, P. J., PORTER, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Affirmed.

Complaint by Louis Franke, mayor of the City of Johnstown (now Joseph Cauffiel, his successor in office) against the proposed increase of rates for natural gas by Johnstown Fuel Supply Company.

The facts are stated in the opinion of the Superior Court and in the report of the case of Franke v. Johnstown Fuel Supply Company, 70 Pa. Superior Ct. 446.

Subsequent to the decision in the latter case the Peoples Natural Gas Company under provision of section 5, Act of May 28, 1885, P. L. 29, filed with the secretary of the Commonwealth a certificate excluding the City of Johnstown from its territory of supply.   On complaint the commission held that this could not be done without its consent and approval and ordered the appellant to continue to supply gas until its consent had been obtained.   From this order the Peoples Natural Gas Co. appealed.

The commission filed the following opinion per REID, Commissioner:

The parties concerned in this proceeding have agreed of record that the commission shall first determine

whether it has jurisdiction of the respondent, the Peoples Natural Gas Company, and if so, whether, under the evidence, it should require this company to continue supplying natural gas to the respondent, the Johnstown Fuel Supply Company, to enable that company to furnish the gas to consumers in the City of Johnstown. It is also agreed that if the commission determines that it has such jurisdiction and that the Peoples Company shall continue to supply gas to the Johnstown Company as it has heretofore been doing, then these companies shall be required to file their respective tariffs and schedules of rates which shall be subject to complaint by any party concerned, and in the event of complaint made the commission shall then ascertain and determine the maximum just, due, equal and reasonable rates which the Peoples Company shall charge the Johnstown Company and which the latter company shall charge consumers in the City of Johnstown.

The Peoples Natural Gas Company is a Pennsylvania corporation operating under the Natural Gas Act of 1885 and is engaged in producing, purchasing and distributing natural gas to consumers in the State of Pennsylvania, and the Johnstown Fuel Supply Company is an independent Pennsylvania distributing company of natural gas. In 1909 a contract was entered into between these companies whereby the former, at the rates therein specified, agreed to supply natural gas to the latter for distribution in the City of Johnstown for a period of at least six years with a provision that thereafter it might terminate the contract upon twelve months' notice to the other party of its intention to do so. The Peoples Company continued to furnish the Johnstown Company with gas, under this contract, until October 1, 1920, at which date it terminated the contract by a notice previously given. It has since continued the supply of gas, pursuant to an order made against it by the commission pending the final determination of complaints filed, which the Johnstown Company is distributing to over

11,000 consumers in the City of Johnstown who have more than $700,000 invested in fixtures and appliances required in making use of the gas thus furnished. The Peoples Company, since the order made against it by the commission as hereinbefore stated, has made, under its common seal and deposited in the office of the secretary of the Commonwealth, a certificate altering its territory of supply of natural gas for consumption, by excluding therefrom the City of Johnstown, and has recorded a copy of said certificate in the office of the recorder of deeds of the County of Cambria. It also contends that inasmuch as it purchases a large part of the gas which it supplies to its Pennsylvania consumers from an allied West Virginia Company, and although the gas thus purchased is intermingled with gas which it produces as well as purchases in Pennsylvania, nevertheless its supplying gas to the Johnstown Company by wholesale for distribution in the City of Johnstown is an interstate transaction and as such is solely within the jurisdiction of the Interstate Commerce Commission.

The foregoing recital of facts indicates the grounds on which the Peoples Company challenges the jurisdiction of the commission over it in this proceeding. Prior to its having terminated its contract with the Johnstown Company and the filing and recording of the certificate altering its territory of supply, as above stated, this commission held that it had jurisdiction to compel this company to file its tariff and schedule of rates covering its service in supplying natural gas to the Johnstown Fuel Supply Company for distribution to consumers in the City of Johnstown. This authority of the commission, on appeal to the Superior Court, was upheld in an opinion by Judge HENDERSON, speaking for the court, to which nothing can be profitably added, Franke v. Johnstown Fuel Supply Company, 70 Pa. Superior Ct. 446. With this adjudication in favor of our jurisdiction, the question now for determination is, has that jurisdiction been ousted by the Peoples Company cancelling its con-

tract with the Johnstown Company and making, filing and recording of the certificate excluding the City of Johnstown from its territory of supply of natural gas, or by both or either of these acts?

Inasmuch as the jurisdiction of the commission was not acquired by virtue of the contract referred to, it cannot be defeated by the termination of that contract. The jurisdiction of the commission was conferred by the statute creating and vesting in it authority to regulate the public service in which the Peoples Company is engaged and the company having undertaken, through the Johnstown Fuel Supply Company, to supply natural gas in the City of Johnstown, which was within its charter territory, that service ipso facto came under the regulatory authority of this commission, and cannot now be abandoned in the manner attempted. The Peoples Company was a controlling factor in procuring the consumers of gas in the City of Johnstown to use natural instead of manufactured gas, and thereby succeeded in causing the artificial gas plant theretofore existing in the city to be eliminated and dismantled. The question therefore is not whether a company producing natural gas can be compelled in the first instance to supply its gas to an independent company engaged in distributing it to consumers, but whether having established such relation and being so engaged, it may under the facts and circumstances of this case, abandon the service at will. In our opinion the execution, filing and recording of the certificate referred to, without the approval of this commission, is as futile to defeat its jurisdiction as the cancellation of the contract under which the company engaged in the service which it now seeks to abandon. If it be conceded that a natural gas company, prior to the passage of the Public Service Company Law, might at will so alter its territory of supply, under section 5 of the Natural Gas Act of 1885 as to exclude certain consumers which it had theretofore undertaken to supply, Germania Refining Company v. Alum Rock Gas Com-

pany, 226 Pa. 433, we take it that this section of that act has been so far modified by the later Public Service Company Law that abandonment of service in chartered and occupied territory, such as disclosed by the evidence in this case, is not now permissible without the sanction of this commission. It follows from what has been said that the jurisdiction of the commission as heretofore found by the Superior Court to exist, has not been in anywise affected by the steps since taken by the Peoples Company to oust it, and we accordingly so find and determine.

Having determined that the commission has jurisdiction, the question recurs should it require the Peoples Company to continue supplying gas to the Johnstown Company? If the supply is shut off the customers on the latter's lines not only would be deprived of this natural product, but the fixtures and appliances installed by them at a cost of approximately $700,000 for making use of it would be rendered valueless, since there is no other known practical source of supply available to them either by purchase or by exploring and drilling for the gas. It would also render valueless the Johnstown Company's distribution system in which it has approximately $...... or more invested, except in so far as this system could be used in the distribution of artificial gas should a plant for its manufacture be installed.

The only reason advanced by the Peoples Company for discontinuing the supply of gas in the City of Johnstown is its inability to furnish adequate service, on account of the shortage of gas, to all its customers during the winter months, and that it deems its first duty is to furnish such service to those consumers taking the gas direct from it as contradistinguished from those taking it through the Johnstown Fuel Supply Company. It appears that since the Peoples Company began supplying gas to the Johnstown Company it has extended its lines 25 or 30 miles east of the City of Johnstown to the City of Altoona and is supplying gas to about 12,000 con-

sumers in that city, which supply is proposed to continue. There is practically no difference in the facilities of the patrons in Altoona and those in Johnstown for using coal in lieu of natural gas for heating purposes, and there is very little difference in the cost of coal between the two cities. However, if the supply of gas were shut off in Altoona there is an operating artificial gas plant there which would be available to those who would want to substitute manufactured for the use of natural gas, and in this they would have a decided advantage over consumers of natural gas in the City of Johnstown both as to the convenience in the use of gas and in the probable loss on the fixtures and appliances which would be rendered valueless in the City of Johnstown by the substitution of the use of coal in place of gas. Non constat that the consumers of gas in the latter city, when they equipped their premises for the use of natural gas, knew anything about the contract between these gas companies, or that their equipment might be rendered valueless by either party to the contract terminating it at will or that their supply of gas was dependent upon any other terms and conditions than those common to all other consumers of natural gas.

Assuming that there is a shortage of natural gas and by reason thereof the Peoples Company will be unable to furnish an adequate supply in cold weather to all the consumers now on its lines, the commission cannot determine in this proceeding what present consumers should or should not be deprived of the company's service. Aside from the method here resorted to for the determination of such a question, the testimony is not sufficiently informing on which to base a finding. There is nothing in the record or evidence presented to justify a discontinuance of the supply of natural gas by the Peoples Company to the Johnstown Company for distribution in the City of Johnstown, and the commission finds and determines that this supply shall be continued and that notwithstanding the termination by the Peo-

560, (1922).]    Statement of Facts—Arguments.

ples Company of its contract with the Johnstown Company for such supply of gas, or the executing, filing and recording by the Peoples Company of the certificate excluding the City of Johnstown from its territory of supply, the commission has jurisdiction and authority to require the Peoples Natural Gas Company to continue this supply of natural gas as heretofore and to permit it to forthwith file, post and publish a tariff and schedule of rates for the gas and service thus supplied and furnished, and an order to that effect will accordingly be made.

### ORDER.

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file, and having been duly heard and submitted by the parties and full investigation of the matters and things involved having been had, and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon, which said report is hereby approved and made a part hereof;

Now, to wit, October 3, 1921, it is ordered: That the Peoples Natural Gas Company, one of the respondents, shall continue to supply natural gas, and service incident thereto, to the Johnstown Fuel Supply Company, the other respondent, for distribution in the City of Johnstown as set forth in a prior order of the Public Service Commission, dated September 13, 1920.

Permission is hereby granted the Peoples Natural Gas Company, respondent, to file, post and publish, according to law, a tariff schedule of rates for the gas and service thus supplied and furnished.

*Error assigned,* among others, was the order of the commission.

*George B. Gordon,* of *Gordon and Smith,* and with him *Arthur E. Young,* for appellant.—The Peoples Natural

Gas Company was at no time under any duty other than a contractual one to supply the Johnstown Fuel Supply Company with natural gas, and even if there had been such a duty, when the appellant filed a certificate under the Natural Gas Act eliminating the City of Johnstown from the territory which it was authorized to serve, it was relieved from the same: Village of St. Clairsville v. Public Utilities Commission, P. U. R. 1921, E 459; State of Washington, on the Relation of the Public Service Commission, v. Spokane & Inland Empire Railroad Co., P. U. R. 1916, D 469; Newark Natural Gas & Fuel Company v. Newark, 242 U. S. 405; Germania Refining Co. v. Alum Rock Gas Co., 226 Pa. 433; New York & Pennsylvania Railway Company v. Public Service Commission, 72 Pa. Superior Ct. 523.

The supply of natural gas by the appellant company to the Johnstown Company is interstate commerce, and the attempt by the Public Service Commission of Pennsylvania to compel the appellant company to sell gas purchased in West Virginia to the Johnstown Company is an interference with interstate commerce: Public Utilities Commission v. Landon, 249 U. S. 236; Pennsylvania Gas Company v. Public Service Commission, 252 U. S. 23; United Fuel Gas Company v. Hallanan, 42 Supreme Court Reporter 105.

*J. E. B. Cunningham,* and with him *Tillman K. Saylor,* City Solicitor, and *Spencer G. Nauman,* for City of Johnstown, intervening appellee.—The appellant company was not so engaged in interstate commerce as to oust the jurisdiction of the Public Service Commission of Pennsylvania: Franke v. Johnstown Fuel Supply Company, 70 Pa. Superior Ct. 446.

The commission had jurisdiction to compel the appellant to continue its service to the City of Johnstown and the filing of its certificate with the secretary of the Commonwealth, limiting the territory of the appellant com-

pany, did not relieve the company from securing the consent of the Public Service Commission to abandon any part of its service.

*David I. McCahill,* for Johnstown Fuel Supply Company, intervening appellee.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., October 9, 1922:

This controversy, which originated over the right of the Johnstown Fuel Supply Company (hereinafter called Johnstown Company) to impose on its customers a ready to serve charge of fifty cents per month, has changed its character, and at present is concerned only with the right of the Peoples Natural Gas Company, the appellant, (hereinafter called Peoples Company) which furnishes the Johnstown Company its entire supply of natural gas, to discontinue such service without the consent or approval of the Public Service Commission. This the Peoples Company attempted to do, under the authority of section 5 of the Natural Gas Act of May 29, 1885, P. L. 29, by filing with the secretary of the Commonwealth a certificate excluding the City of Johnstown from its territory of supply, and having the same recorded in Cambria County. On complaint to the commission, that body held that this could not be done summarily and without its authority or approval and ordered the Peoples Company to continue to supply natural gas to the Johnstown Company for consumption by the public until its consent to such discontinuance of service had been applied for and obtained.

Many of the questions raised on the present appeals were decided by this court adversely to the appellant in Franke v. Johnstown Fuel Supply Co., 70 Pa. Superior Ct. 446, when another phase of this same litigation was

before us.    Notwithstanding the earnest and insistent argument of the able counsel for the appellant we are not convinced that our decision on the merits in that case was wrong.    We there decided, (1) that in its relations with the Johnstown Company appellant was a public service company doing business and performing a public service, and was subject to the provisions of the Public Service Company Law with respect to its sales of natural gas; and (2) that the fact that it purchased some of the gas thus sold or furnished the Johnstown Company from a West Virginia corporation at the state line did not prevent the jurisdiction of the Public Service Commission from attaching, nor forbid regulation of its service and rates by the duly constituted state authority. We still think those conclusions are sound.

1. Appellant company is a corporation organized under the Act of May 29, 1885, P. L. 29, for the purpose of producing, dealing in, transporting, storing and supplying natural gas.    Section 10 of that act declares the transportation and supply of natural gas for public consumption to be a public use and grants such corporations the right of eminent domain for the laying of pipe lines for the transportation and distribution of natural gas.    Our Supreme Court held that this grant was within the constitutional power of the legislature: Johnston v. Peoples Natural Gas Co., 4 Sadler 215, 5 Cent. Rep. 564, 7 Atl. 167; and, that companies organized under said act are public corporations, engaged in a business of a public interest and not subject to local taxation upon land containing gas necessary and indispensable to the company in carrying out the public purpose for which it was incorporated: St. Mary's Gas Co. v. Elk County, 191 Pa. 458.    Article I, section 1 of the Public Service Company Law expressly provides that the term "Public Service Company" when used in the act shall include all natural gas companies.    The appellant company availed itself of the right of eminent domain granted under section 10 of the Act of 1885 and condemned land for the

very purpose of extending its pipe line to the City of Johnstown so as to be able to supply gas to the Johnstown Company for consumption by the public, and in such condemnation proceedings declared of record "that the pipe line herein described is for the transportation and supply of gas for public use and consumption." It is true, as contended by appellant, that the Act of 1885, (section 10) in connection with the grant of the right of eminent domain, only imposes upon natural gas companies the duty to furnish natural gas to consumers along their lines and within their respective districts. But it does not forbid the furnishing or sale of natural gas by one such corporation to another; on the contrary, it rather contemplates that one natural gas company may obtain a part or all of its supply of gas from another, otherwise there would be no reason for specially granting the company the right to "deal in" natural gas, (section 1),—produce, mine, transport, store and supply" would have covered all other operations; nor for the use of the word "receive" in connection with its source of supply, (section 2), if it were required to mine for or produce its own gas. It not being unlawful, therefore, for one natural gas company to sell gas to another such company, such sale comes within the lawful operations of the corporation, under its charter, and is within the purview of the Public Service Company Law. It may be broadly stated that every public service company, while performing any service authorized by its charter, is engaged in public service within the meaning of the Public Service Company Law and subject to the supervision and regulation of the Public Service Commission, so far as the State may lawfully supervise and regulate its operations. The opinion of Judge HENDERSON in the former case, 70 Pa. Superior Ct. 446, pages 455-458 so clearly and exhaustively disposes of this point that it is unnecessary to consider it at greater length or do more than refer to it in this connection. See also opinion of Judge LINN in Vernon Twp. v. P. S. C., 75 Pa. Superior

Ct. 54, pp. 60-62, which rebutted the contention that the Public Service Company Law did not apply to service rendered to a municipality; and Lehigh Valley Transit Co. v. P. S. C., 78 Pa. Superior Ct. 105, pp. 111-113, where it was held that the rates and service of a street railway corporation are subject to the supervision and regulation of the commission even as to operations voluntarily engaged in by authority of law, but not required as a part of its charter obligations.

2. Appellant is a Pennsylvania corporation. It has no lands or pipe lines outside the State of Pennsylvania, and does not own or transport any gas in any other state. It has gas wells in at least six counties in this State and produces 11/28 of all the gas it sells. It buys a very small quantity from another Pennsylvania company, but most of the gas not produced by it,—practically 17/28 of its supply,—it buys outright at the state line from the Hope Natural Gas Company, a West Virginia corporation which mines or procures the gas in that state. The gas thus received into its pipe lines at the state line near Brave, Greene County, is commingled with gas produced in its own wells in Greene County, Washington County and Allegheny County and is supplied to its own customers at the burner tips under special franchises in about 75 cities and boroughs in Pennsylvania. A branch line goes out from one of these main lines at McKeesport, from which the company supplies its customers in Jeannette, Greensburg and Latrobe, and the Johnstown Company, and from this line, at a point about 9,821 feet west of the Johnstown city line, runs a line to Loretta, Portage, Cresson, Summit, Altoona and Juniata. Of the gas transmitted by this branch pipe line, about three-fourths is bought from the Hope Company and one-fourth is produced from the Peoples Company's own wells. It maintains a pumping station at the state line, near Brave, and one at Derry on the branch line serving the Johnstown Company. It does not make a business of wholesaling its gas; in fact,

in every instance, except to the Johnstown Company, it furnishes the gas to its consumers at the burner tips and is a local distributing company. The fact that, operating under special franchises, it distributes the gas to 75 different localities does not make it any the less a distributing company.

The appellant company in this manner distributes gas from the same pipe line which runs to Johnstown to its consumers in a number of cities and boroughs, before the gas arrives at Johnstown. There is no doubt that as to these cities and boroughs the Peoples Company is subject to the supervision and regulation of the Public Service Commission, both as to service and rates. The appellant has admitted it by filing its schedules, and the decisions of the Supreme Court of the United States settle it beyond peradventure. In the case of Public Utilities Commission v. Landon, 249 U. S. 236, the Kansas Natural Gas Company produced gas in Oklahoma and Kansas and by its own pipe lines transported the gas thus produced into and through Kansas and over into Missouri. It was unquestionably engaged in interstate commerce, and did not distribute at all to local consumers. It supplied gas through connecting pipe lines to 32 distributing companies which had consumers in 47 cities and towns in Kansas and Missouri, for a percentage of the gross amounts paid by the customers. The Kansas Natural Gas Company through its receivers, Landon et al., contended that the Kansas Utilities Commission had no power to regulate the rates to be charged the consumers by the distributing companies and alleged such action to be an illegal interference with interstate commerce, but the court said: "But we cannot agree with its [the lower court's] conclusions that local companies, in distributing and selling gas to their customers, acted as mere agents, immediate representatives or instrumentalities of the receivers, and as such carried on without interruption interstate commerce set in motion by them. That the transportation of gas through

pipe lines from one state to another is interstate commerce may not be doubted. Also, it is clear that, as part of such commerce, the receivers might sell and deliver gas so transported to local distributing companies free from unreasonable interference by the State. [Citations.] But in no proper sense can it be said, under the facts here disclosed, that sale and delivery of gas to their customers at burner tips by the local companies operating under special franchises constituted any part of interstate commerce. The companies received supplies which had moved in such commerce, and then disposed thereof at retail in due course of their own local business......The thing which the receivers actually did was to deliver supplies to local companies. Exercising franchise rights, the latter distributed and sold the commodity so obtained upon their own account, and paid the receivers what amounted to two-thirds of their receipts from customers. Interstate movement ended when the gas passed into local mains."

The facts in this case would be exactly the same as the Landon case if the Hope Natural Gas Company transported the gas in its own lines from West Virginia into this State to some point west of Johnstown, and connected with the pipe line of the Peoples Company at that point. Under the Landon decision, the Public Service Commission of this State would then have jurisdiction to supervise and regulate the rates to be charged by the Peoples Company at such point of delivery. The Peoples Company is in no sense a transportation company or common carrier: Carother's App., 118 Pa. 468, 485. It received supplies of gas which had moved in interstate commerce, mingled it with gas produced by it in this State, and then disposed of the mixture in due course to its customers, on its own account exclusively: Landon case, supra, p. 245. "Its only business as disclosed by the evidence is the production and supplying of gas. It does transport the gas from the source of supply to the distributing points but this transportation is

incidental merely to the business in which it is engaged. It is necessary that the gas be transported in pipes but nothing in the evidence tends to show that the defendant is a common carrier. It does not hold itself out as a transporter of gas for other companies or for private individuals. It is the owner of all the gas that is in its pipes and it has never engaged in gas transportation as a business": Franke v. Johnstown Fuel Supply Co., 70 Pa. Superior Ct. 446, 455. The principle is the same whether its distributing line begins at Brave or at some point eastward; whether it serves one community or seventy-five; if it is purely a distributing and not a transportation company.

If the Public Service Commission has jurisdiction of the Peoples Company at some point of distribution along its line west or southwest of Johnstown, it follows that it retains that jurisdiction as to all points on its pipe line east of and beyond such point. When the interstate movement once ended in the Peoples Company's pipe line, it did not reassume the character of interstate commerce, as the gas continued its flow eastward. The interstate movement actually ended when the gas passed into the main of the Peoples Company for distribution among its customers, which was at the state line, at Brave; the "city gate" referred to in some of the decisions, was, in fact, in the present case, at the state line where the delivery was complete and the purchaser received the gas for purposes of distribution within the State.

The other case cited and relied upon by the appellant is even more adverse to its contention. In Pennsylvania Gas Company v. P. S. C., 252 U. S. 23, the Pennsylvania Gas Company produced natural gas in Pennsylvania and in its own pipe lines directly transported it into New York and sold it to consumers in the City of Jamestown. It was held that as the rates of gas companies transmitting gas in interstate commerce are not only not regulated by Congress, but the Interstate Commerce Act ex-

pressly withholds the subject from federal control, the Public Service Commission of New York could regulate the rates to be charged consumers in Jamestown and make local regulations of a reasonable character, notwithstanding the gas was transported in interstate commerce. The opinion laid stress on the fact that the transmission was interstate commerce because the gas was transported and furnished directly by the producing company to the consumers in another state. That case would be like this one if the Hope Natural Gas Company produced its gas in West Virginia, transported it in its own lines into Pennsylvania and sold its gas directly to consumers at various points in this State; and it holds that even so, the Public Service Commission of Pennsylvania could regulate the rates to be charged the consumers by the Hope Company at such points. It has no likeness to the instant case, since no gas is delivered by the Hope Company from its wells in West Virginia directly, and in its own pipe lines, to consumers in Pennsylvania. The Peoples Company buys gas outright at the state line and exercising franchise rights, distributes the gas thus owned by it, mixed with gas produced by it in this State, to its customers in various cities and towns in Pennsylvania, constituting a transaction wholly intrastate in character. And, as before pointed out, the character of intrastate transmission once having attached to the gas in appellant's pipe line, it is retained throughout its whole length thereafter.

There is nothing in the unreported decisions cited by appellant in its supplemental brief, (Central Trust Co. v. Consumers L., H. & P. Co., U. S. Dist. Ct. Kansas, 1st Div.; State of Missouri v. Kansas Natural Gas Co., U. S. Dist. Ct., West. Div., West Dist. of Mo.; or in State of Kansas v. Kansas Natural Gas Co., 208 Pac. 622), which leads to a different conclusion. See also, Banker Bros. Co. v. Com. of Penna., 222 U. S. 210; Newark Natural Gas & Fuel Co. v. City of Newark, Ohio, 242

U. S. 405, 408; Bowman v. Continental Oil Co., 256 U. S. 642, 648, 649.

(3) In addition to the propositions advanced on the former appeal, it is also contended that the commission has no authority to make the order complained of because in conformity with the provisions of section 5 of the Act of May 29, 1885, supra, appellant has made and filed in the office of the secretary of the Commonwealth, and recorded in Cambria County, a certificate surrendering and abandoning so much of its pipe line route as extends beyond the intersection of its line leading to Altoona, at a point 9,821 feet from the City of Johnstown, and excluding from its territory of supply the City of Johnstown and its immediate vicinity. This was done without application to, or the consent or approval of the Public Service Commission.

Appellant contends that such consent is not necessary because the right so to do was in terms granted by the Act of 1885, (Germania Refining Co. v. Alum Rock Gas Co., 226 Pa. 433), is not expressly revoked by the Public Service Company Law and is preserved to it by article III, section 12 of that law, which provides: "Every public service company shall be entitled to the full enjoyment and exercise of all and every the rights, powers and privileges which it lawfully possesses, or might possess, at the time of the passage of this act, except as herein otherwise expressly provided."

We have already pointed out that natural gas companies are expressly included within the public service companies governed by the act. The act provides that all such companies, shall "furnish and maintain such service, including facilities, as shall in all respects be just, reasonably adequate, and practically sufficient for the accommodation and safety of its patrons, employees and the public, and in conformity with such reasonable regulations or orders as may be made by the commission," (article II, section 1a), and forbids undue or unreasonable discrimination between localities (article

III, section 8b). The terms "service" and "facilities" as thus employed in the act are used in their "broadest and most inclusive sense" (article I, section 1). The act grants power and authority to the commission generally to supervise and regulate all public service companies doing business within the Commonwealth (article V, section 1); to determine, specify and order the just, reasonable......and sufficient service, facilities, rules, regulations or practices to be put in force, observed, rendered, used or furnished by public service companies in the performance of their public duties, (article V, section 2), and provides that the enumeration of special powers granted the commission in the act shall not exclude any powers possessed by it under its general grant (article V, section 28). It provides that the commission must approve and issue its certificate of public convenience before such public service company can be incorporated, organized or created (article III, section 2a), or begin the exercise of any right, power, franchise or privilege under any ordinance or municipal contract (article III, section 2b). Without the approval of the commission a public service company may not lawfully renew its charter or obtain any additional rights, powers, franchises or privileges by amendment or supplement to its charter, or otherwise (article III, section 3a); or sell, assign, transfer, lease, consolidate or merge its property, powers, franchises or privileges to or with any other corporation or person (article III, section 3c). In short, the commission's powers of supervision and regulation are of the broadest and most comprehensive character and it is difficult to conceive of any subject of intrastate service, facilities or rates not within its scope and authority.

Appellant frankly admits that it could not now be organized and incorporated without the approval of the commission; that without such approval it could not obtain and exercise any new rights under municipal ordinance or contract; nor extend or enlarge its field of

production or supply, or operate in new territory to replenish a dwindling supply; but it contends that it may still lessen its field of either production or supply simply by filing and recording the certificate referred to in section 5 of the Act of 1885 and without any action on the part of the commission, irrespective of how helpless such a right would render the commission in its supervisory powers and how ineffective and abortive it would make its orders and regulations. If a natural gas company retains the arbitrary power to punish a community which has the hardihood to question any of its rates, regulations, or practices by cutting it out of its field of supply and refusing to furnish it any gas at all, if it may evade the orders of the commission relative to its service at a particular place by eliminating that place from its field of operations, the legislature might just as well not have declared such corporations subject to supervision and regulation by the commission. We cannot agree to such a proposition. We are of opinion that the act is broad enough in its grant of authority to the commission to cover the present situation; that the broad general powers given the commission apply to any alteration of territory of production or supply, and are not limited to such only as extend or increase such territory. Furthermore, the Public Service Company Law expressly declares the consent of the commission necessary before any public service company can obtain any additional rights, powers or privileges, by any amendment or supplement to its charter, or otherwise (article III, section 3a). A release from the performance of public duties or the furnishing of public service in a part of its territory which it would otherwise be bound to serve, may well be considered an additional privilege obtained, no less than an extension of such service may be so regarded. Such a right or privilege may be negative as well as positive.

 Appellant cites in support of its contention our decision in the case of N. Y. & Penna. Ry. Co. v. P. S. C., 72

Pa. Superior Ct. 523. It misconstrues the effect of that decision. We there decided that the Act of April 9, 1856, P. L. 293, furnishes a full and complete method of procedure for corporations desiring to surrender their charter powers and quit business or dissolve and that in such case the approval of the Public Service Commission is not necessary. But we were careful to distinguish between the term, power, and the extent of service or operation under that power. Regulation of the latter is expressly committed to the commission. But the right to surrender the primary power or franchise of the corporation in the manner prescribed by the Act of 1856 is not affected by the Public Service Company Law. This, we said, was "the absolute relinquishment of the corporate franchise to the extent of the power surrendered, and, if the franchise is to do but one thing, is equivalent to a dissolution," p. 530. "The surrender of a franchise is the voluntary death of the corporation": Houston v. Jefferson College, 63 Pa. 428, 437. "The power contained in the charter of the appellant was to operate a steam railroad in Pennsylvania under the provisions of the General Railroad Act. When it surrendered that power, it gave up its franchise to operate a railroad": N. Y. & Penna. Ry. Co. v. P. S. C., supra, p. 529. Had the appellant in that case sought to abandon its service as to a part of its chartered route, or relinquish passenger service, while still retaining its franchise to operate a railroad, the consent of the Public Service Commission would have been necessary before it could lawfully curtail its service in those respects: P. & R. Ry. Co. v. P. S. C., 67 Pa. Superior Ct. 604. The power contained in the charter of this appellant is to produce, deal in, transport, store and supply natural gas. The place where the natural gas is intended to be mined for, produced or received and the place or places where it is to be supplied to consumers, which are required to be set forth in the application for charter (section 2, paragraph 2) consti-

tute a definition or limitation of the extent of the general power conferred on the corporation by its corporate franchise. They may be changed or altered as provided by law,—with the approval of the Public Service Commission—without affecting the life of the corporation, but if the power to produce, deal in, transport, store or supply natural gas is surrendered, the corporation is dead, is not doing business, and is not subject longer to the supervision or regulation of the Public Service Commission.

Appellant has not surrendered the franchise power granted by its charter; it has merely sought to curtail its field of service under that power by abandoning certain territory which otherwise it would be bound to supply. This it cannot do without application to and the approval of the Public Service Commission.

The question before us is not, as stated by appellant, whether one natural gas company can be compelled to furnish another natural gas company with gas for its corporate purposes, but rather, where one natural gas company has for years voluntarily been supplying another such company with gas for consumption by the public in a municipality within the first company's charter field of supply, whether it may summarily discontinue such service and eliminate said municipality from its charter field of supply, without first applying to and obtaining the consent of the Public Service Commission.

We are not now called upon to decide whether, if appellant had made application to the commission for leave to eliminate the City of Johnstown from its field of supply it should have been allowed. We only decide that it cannot obtain the privilege of a release from part of its charter obligations without first applying to and securing the consent of the Public Service Commission.

To that extent the assignments of error are overruled and the order of the commission is affirmed.

DISSENTING OPINION BY LINN, J., IN WHICH PORTER, J., CONCURS:

Passing the disputed questions arising under the law of Pennsylvania, the decision of which cannot determine the federal question raised, I consider the order of the commission inconsistent with the interpretation of the commerce clause by the Supreme Court and therefore dissent. The order requires appellant to continue conducting interstate commerce with the Johnstown Fuel Supply Company after the notice of July 25, 1919, given pursuant to the contract of August 14, 1909, that appellant would cease such commerce after October 1, 1920,— certainly adequate notice but for the order of the commission. For present purposes it is assumed that the Johnstown Company would pay an adequate price, so that no question on that subject is involved. The inquiry is, can the State require appellant to continue interstate commerce with the local company in the circumstances disclosed by the record?

In Pennsylvania Gas Company v. Pub. Ser. Com., 252 U. S. 23, 28, it is said "......the transmission and sale of natural gas produced in one state, transported by means of pipe lines and directly furnished to consumers in another state, is interstate commerce within the principles of the cases already determined by this court: West v. Kansas Natural Gas Co., 221 U. S. 229; Haskell v. Kansas Natural Gas Co., 224 U. S. 217; Western Union Telegraph Co. v. Foster, 247 U. S. 105." And it was held that the New York commission could regulate the rate charged to local consumers of gas in that state, although the direct sale of gas to consumers by the company which brought it into New York, was interstate commerce.

"The thing which the state commission has undertaken to regulate, while part of an interstate transmission, is local in its nature, and pertains to the furnishing of natural gas to local consumers within the City of Jamestown in the State of New York. The pipes which reach the customers served are supplied with gas di-

rectly from the main of the company which brings it into the State, nevertheless the service rendered is essentially local, and the sale of gas is by the company to local consumers who are reached by the use of the streets of the city in which the pipes are laid, and through which the gas is conducted to factories and residences as it is required for use. The service is similar to that of a local plant furnishing gas to consumers in a city.

"This local service is not of that character which requires general and uniform regulation of rates by congressional action, and which has always been held beyond the power of the states, although Congress has not legislated upon the subject. While the manner in which the business is conducted is part of interstate commerce, its regulation in the distribution of gas to the local consumers is required in the public interest and has not been attempted under the superior authority of Congress.

"It may be conceded that the local rates may affect the interstate business of the company. But this fact does not prevent the State from making local regulations of a reasonable character. Such regulations are always subject to the exercise of authority by Congress enabling it to exert its superior power under the commerce clause of the Constitution."

The comparison of the service "to that of a local plant furnishing gas to consumers in a city" suggests reference to P. U. C. v. Landon, 249 U. S. 236, in which the gas was not sold direct to the consumers by the importing company but was sold to local companies who made the distribution; in those circumstances, the court held "that the interstate movement ended when the gas passed into local mains; that the rates to be charged by the local companies had but an indirect effect upon interstate commerce and, therefore, the matter was subject to local regulation" (252 U. S. at 28).

As it appears at bar that the wholesale delivery by appellant to the Johnstown distributing company is not

a sale or distribution to local consumers, appellant is not in the position of the gas company whose rates to local consumers were fixed by the New York commission. In Johnstown the local distribution is by the intervenor, the Johnstown Fuel Supply Company, which receives the gas that can only be obtained by commerce among the states and sells it to over 11,000 consumers. It can therefore not be questioned, within the sense of both decisions cited, that, save for a matter next to be considered, the gas moved in interstate commerce and that the "interstate movement ended when the gas passed into the local main" of the Johnstown Company.

"Interstate commerce" it has been said, "is a practical conception and what falls within it must be determined upon consideration of established facts and known commercial methods: Rearick v. Pennsylvania, 203 U. S. 507, 512; The Pipe Line Cases, 234 U. S. 548, 560": P. U. C. v. Landon, 249 U. S. 236, 245.

An analysis of the transaction would seem to disclose every element of interstate commerce described in the cases quoted. The larger part of the gas involved comes, —and must come—from West Virginia. It is bought for distribution in Pennsylvania. "The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce": Crenshaw v. Arkansas, 227 U. S. 389, 396. Appellant who buys the gas and brings it into Pennsylvania, sells it in bulk to a local distributing company (as the receivers did in the Landon case). The selling company in West Virginia, the Hope Natural Gas Company, owns the pipe line through which the gas is conducted in West Virginia to the state line; appellant owns the pipe line on the Pennsylvania side of the state line, a boundary of course without area, and unable to support either receiving or delivering equipment; appellant and its West Virginia vendor are owned by one company.

Under the Pennsylvania Gas Company's case (supra), it would be agreed that if a single company procured the gas in West Virginia and conducted it into Pennsylvania in its own pipe lines and chose to distribute it locally in Johnstown, the transaction would be interstate commerce up to the burner tips, and that the State could regulate the retail price at the burner tip in the absence of congressional action. It would likewise follow from the Landon case (supra) that if a single company procured the gas in West Virginia and conducted it through its own pipe line to the point in Pennsylvania where appellant delivers the gas to the local distributor, the Johnstown Company, the transaction would retain its interstate character up to the moment the gas passed into the mains of the local company.

The determining inquiry then seems to be whether a transaction, which in its practical conception, possesses every characteristic of interstate commerce so defined, loses that interstate character because the title to the pipe line and contents south of the state line is in one company, and north of the state line is in another, both companies being controlled by a third, the contents of the pipe being in process of interstate transportation "in a continuous route or journey." Certainly both the West Virginia vendor and the Pennsylvania vendee, the appellant, together are engaged in interstate commerce: Swift v. U. S., 196 U. S. 375; W. U. Tel. Co. v. Foster, 247 U. S. 105, 111, 113; Eureka Pipe Line Co. v. Hallanan, 42 Sup. Ct. 101; United Fuel Gas Co. v. Hallanan, 42 Sup. Ct. 105; Lemke v. Farmers' Grain Co., 42 Sup. Ct. 244. In this inquiry is it material that title passes at the state line? In Rearick v. Pennsylvania, 203 U. S. 507, 512, it is said: " 'Commerce among the several states' is a practical conception not drawn from the 'witty diversities' (Yelv. 33) of the law of sales: Swift & Co. v. United States, 196 U. S. 375, 398, 399. The brooms were specifically appropriated to specific contracts, in a practical, if not a technical, sense. Under

such circumstances it is plain that, wherever might have been the title, the transport of the brooms for the purpose of fulfilling the contracts was protected commerce."

The character of interstate commerce attaches when property has "been started upon such transportation in a continuous route or journey": Coe v. Errol, 116 U. S. 517, 527. In Texas, etc., Railway Co. v. Sabine Tram Co., 227 U. S 111, it was held that shipments of lumber on local bills of lading shipped from one point to another in the same state, destined from the beginning for export, were shipments in foreign and not in intrastate commerce. The court said, "The determining circumstance is that the shipment of the lumber to Sabine was but a step in its transportation to its real and ultimate destination in foreign countries. In other words, the essential character of the commerce, not its mere accidents, should determine." In citing that decision in W. U. Tel. Co. v. Foster (supra) the court added, "practice, intent and the typical course, not titles or niceties of form, were recognized as determining the character ......" See also Eureka Pipe Line Co. v. Hallanan and United Fuel Gas Co. v. Hallanan; Lemke v. Farmers' Grain Co. (supra).

It is also immaterial in this inquiry, that appellant in many places sells gas direct to consumers at rates subject to regulation at the burner tips; at bar, appellant has been ordered to supply in bulk from a product moving in commerce among the states enough of that product to enable the Johnstown Fuel Supply Company to satisfy the requirements of its 11,000 consumers.