## Citizens Mutual Telephone and Telegraph Company, Appellant, *v.* The Public Service Commission, Appellee, and Tioga County Bell Telephone Company, Intervening Appellee.

*Public Service Company Law—Public Service Commission—Powers —Telephone Company contracts—Illegal—Abandonment of service— Resumption.*

Two competing telephone companies relinquished to each other certain rights within their respective territories, under a contract which contained a sixty day termination clause. The contract was not approved by The Public Service Commission as required by the Public Service Company Law. The relinquished service was subsequently resumed and a complaint filed by the competing company before the Public Service Commission.

In such case an order of the Commission to discontinue the renewed service on the ground that the territory had been abandoned was error.

No actual abandonment was accomplished, nor did the contract receive the requisite approval of the Commission.

Where two competing companies are already established in a district the Commission cannot drive one out of the field so long as it is furnishing adequate service and willing to do so and confiscate its property simply because it feels that one corporation could supply the needs of the community. It has no more right to effect confiscation in this respect than it has with regard to rates.

374    CIT. MU. T. & T. CO., Appel., *v.* P. S. C.

Argued March 14, 1928. Appeal No. 16, March T., 1928, by plaintiff from order of The Public Service Commission, Complaint Docket No. C7163-1927 in the case of Citizens Mutual Telephone and Telegraph Company v. The Public Service Commission of the Commonwealth of Pennsylvania and Tioga County Bell Telephone Company. Before HENDERSON, TREX-LER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Complaint against resumption of service relinquished under unlawful contract.

The facts are stated in the opinion of the Superior Court.

The Public Service Commission ordered respondent to discontinue service. Respondent appealed.

*Error assigned,* among others, was the order of the Commission.

*Chester H. Ashton,* and with him *Andrew B. Dunsmore,* for appellant, cited: Norristown v. Reading Transit and Light Co., 277 Pa. 459; Peoples Natural Gas Co. v. Public Service Commission, 79 Pa. Superior Ct. 561; Borough of Carlisle v. Public Service Commission, 81 Pa. Superior Ct. 475; Pennsylvania Utilities Co. v. Public Service Commission, 69 Pa. Superior Ct. 612; Harmony Electric Co. v. Public Service Commission, 78 Pa. Superior Ct. 271.

*John Fox Weiss,* Counsel, and with him *E. Edward Mather, Jr.,* Legal Assistant, and *Wendell Y. Blanning,* Assistant Counsel, for The Public Service Commission, cited: Relief Electric L. H. & P. Co's. Petition 63 Pa. Superior Ct. 1; Perry County T. & T. Co. v. Public Service Commission, 265 Pa. 274; Shaffer v. Public Service Commission, 74 Pa. Superior

Ct. 597; Fogelsville and Trexlerville Electric Co. v. Penn Power & Light Co., 271 Pa. 237.

*G. Mason Owlett,* and with him *T. A. Crichton,* for intervening appellee, cited: York Haven Water & Power Co. v. The Public Service Commission, 287 Pa. 241.

OPINION BY TREXLER, J., April 16, 1928:

The Farmers' Mutual Telephone Company, predecessor to complainant, and the Citizens' Mutual Telephone and Telegraph Company, respondent, both held franchises to render telephone service in Tioga County and were rendering such service on January 1, 1924. Prior to 1920, they owned and operated jointly a central office in the Borough of Tioga, and separately and competitively owned and operated their outside plant facilities in that borough. On September 1, 1920, these companies entered into an agreement, the intent of which was to eliminate the competitive situation in each of the communities of Tioga, Mansfield and Covington, all in Tioga County. By it respondent agreed to cease the exercise of its right in certain territory and the Farmers' Company agreed to a similar cessation in other territory. Specifically in Tioga, respondent agreed to relinquish to the Farmers' Company the entire central office equipment and to maintain its outside plant facilities only for the service of those of its "stockholders and patrons" who were then connected therewith. Pursuant to the provisions of this agreement, respondent turned over to the Farmers' Company the central office equipment in Tioga, ceased to accept additional subscribers in the Borough of Tioga, and continued to maintain its lines only for those subscribers already connected therewith. The Farmers' Company, for its part, refrained from making extensions into the territory which it had agreed

should be served by respondent. Further, the Farmers' Company, having since become the Tioga County Bell Telephone, complainant in this case, in reliance both on the agreement and on the subsequent acts of both parties thereunder, made material and expensive improvements to its central office and outside plant facilities and established connections to the system of the Bell Telephone Company of Pennsylvania. The agreement could be terminated by either party on sixty days' notice.

The parties complied substantially with the agreement until the Tioga County Bell Telephone Company began to charge and exact a switching charge at their Tioga exchange to the Citizens' Company. The appellant then ceased using the said exchange and severed its connections with it and attempted to erect and operate an exchange in the Borough of Tioga. The matter was brought before the Public Service Commission upon a complaint made by the Tioga County Bell Telephone Company and the Commission ordered the Citizens' Company to discontinue the central office service in the Borough of Tioga and to cease and desist of rendering any service in the said borough to persons not served by it immediately prior to the installation of said central office.

The agreement was not lawful as it was not approved by the Public Service Commission. (Sec. 3, Article 3, Act of 1913, p. 1388.) The companies could not make such an agreement because they had not resigned their rights as telegraph companies. Act of July 22, 1919, P. L. 1123. Constitution of Penna. Article 16, Sec. 12. Moreover, the contract in this case was merely an arrangement, temporary in its character, for it provided for its termination upon sixty days' notice and necessarily after such termination, the parties would have the same powers as they had before the contract was entered into. The contract, being illegal, bound

no one, and either party could refuse to recognize it or could set it aside. The Public Service Commission recognizes this but considers it of evidential value as showing that the respondent had abandoned certain rights in the Borough of Tioga. We do not regard the contract as proof of that fact. There certainly was no abandonment of the territory embraced in the Borough of Tioga. Although limited to patrons existing at the time of the agreement, the Citizens' Company continued to serve such patrons, had its poles and its wires and occupied the borough for the purpose of its incorporation. If, as the Commission states, the company must obtain consent to resume the exercise of its powers to serve every one desiring service in the borough, by the same token it should have had permission to abandon such rights to serve. Peoples' Natural Gas Co. v. P. S. C., 79 Pa. Superior Ct. 560. The Borough of Tioga, being within the territory in which the company operated, the installation of a switchboard could not be regarded as the acquiring of an additional right, power or privilege.

The Public Service Commission evidently considered that the present case afforded a good opportunity of stopping duplication of telephone facilities and it states in its report that such duplications are recognized as undesirable. Perry County Telephone & Telegraph Co. v. P. S. C., 265 Pa. 274. As an economic proposition, it is true, in most instances that a single telephone company can best serve the public, but we do not think that the carrying out of this proposition should be extended to suppress competition. As we understand it, the policy of the Public Service Commission should be to prevent competition by refusing entrance of new companies in territories already adequately supplied. This, we think, is the gist of the opinion of the court in Perry County Telephone & Telegraph Co. v. P. S. C., above referred to. In Har-

mony Elec. Co. v. P. S. C., 78 Pa. Superior Ct. 282, our court speaking through Judge KELLER, stated, "Where two competing companies are already established in a district, the Commission cannot drive one out of the field so long as it is furnishing adequate service and willing to do so, and confiscate its property simply because it feels that one corporation could supply the needs of the entire community. It has no more right to effect confiscation in this respect than it has with regard to rates."

The Citizens' Company has in all about three thousand subscribers. It is essentially a rural company and conducted under what may be determined old methods, but however old the methods are, they seem to be satisfactory to the subscribers, the service being furnished at a very low rate. The engineer who reported upon the subject states, "the respondent represents a rural group whose desires and needs do not harmonize with the more urban aspect of complainant [the Bell Company], and consequently respondent is being subjected to a vigorous external economic pressure of changing condition, against which a positive internal resistance or inhibition to change is presented." It would seem that the pressure to change conditions of operation of the socalled rural group should come from subscribers and not from its competitor, and that an internal resistance or inhibition against making a change so as to conform to the more urban ideas of its rival is under the circumstances quite natural. We gather that the Citizens' Company is largely of a co-operative character and that the subscribers are content with the service rendered and until they complain, its rival with its new methods need not interfere, and in any event if conditions are bad, the company may be directed to improve them.

To recur to the real question in the case, we do not find that the Citizens' Company ever abandoned any

right, power or privilege in the borough of Tioga and we believe the Public Service Commission erred in so holding.

The order of the Public Service Commission is reversed.